Good morning, your honors. My name is Richard Weidman and I'm the appellant pro se in this case. The first issue in this case is whether the case was wrongfully removed from Fairfax Circuit Court to U.S. District Court, especially in light of my argument that Virginia had personal jurisdiction over all of the defendants in the case. The case involves my lawsuit against the Exxon Mobil Corporation, one of whose main headquarters was in Fairfax, Virginia. I served as their medical director there. That was a center for all downstream activities of Exxon Mobil Corporation, including all refining and supply operations, their engineering departments, all of the marketing of fuels, lubricants, etc. It's alleged that all of the wrongful acts taken by the company and its employees against me took place in Fairfax, Virginia, and that the employees were acting on behalf of the corporation. Some of the employees resided in Virginia, some in other states, but all came to commit their wrongful acts in Fairfax, Virginia. Now, Exxon Mobil, as I indicated from its important headquarters in Fairfax, Virginia, Exxon Mobil and all the defendant employees had significant and continuous contact with the forum state of Virginia, and all the defendants purposefully availed themselves of the benefits and protections of the Commonwealth of Virginia. So I believe that, according to the rulings of International Shoe, since the defendants met the criteria of contact with the state and purposeful availment, they came under the jurisdiction of Virginia. But what about diversity jurisdiction in the federal courts? How do you get around that? My analysis of this is it's really an issue of the personal jurisdiction of Virginia versus the diversity jurisdiction. In the International Shoe case, if the International Shoe Corporation could have claimed that it was not a resident of the state of Washington, it could have escaped from the jurisdiction of the state of Virginia. So I think in a situation like this, unless the personal jurisdiction of the state takes precedence over diversity jurisdiction, there's no meaning, as far as I can tell, to the case of International Shoe versus state of Washington. And I believe that all the defendants in the case met the criteria of purposeful availment and of contact. And if they met these two criteria, there is, and I believe this is the interpretation of the International Shoe case, there's tacit consent to the state's jurisdiction. So they can consent to the jurisdiction of the state if they wanted to, and they tacitly did so by meeting the two criteria. And when there's diversity of the parties, the defendant can remove it to federal court, and the federal courts then have jurisdiction. So how is that removal not appropriate? Well, again, reading my interpretation of the International Shoe case is that if that were the case, then having personal jurisdiction over a state that was out of state would have no meaning. And the defendant in International Shoe was a corporation that was incorporated in another state, and that's meaningful. That's impersonal jurisdiction in terms of looking at it in that sense from a state, but Judge Black is trying to, not trying, she very clearly asks you to deal with the diversity question. Put it simply, what Virginian did you sue? You're a Virginian? Yes, I am. Right, you're a Virginian, correct? Yes. What Virginian did you sue? I sued several Virginians, and that was the second issue which had to do with the alleged fraud. So you don't have complete diversity is what you're saying? I'm saying that also, yes, that's my second argument. Yeah, okay. Well, let's get to the second argument. Okay, the second argument has to do with the fact that the court ruled that there was fraudulent joinder of three of the in-state, which is all the in-state defendants. The standard which the district court used was a no possibility of liability in-state court standard, but two of the non-diverse defendants I contend were clearly alleged in the lawsuit to have played significant roles in the wrongful discharge of me. And specifically, the defendant Samsell was alleged to have conducted a quote-unquote sham, i.e. deceitful investigation of my complaints to the corporation on the basis of which my complaints were rejected, I was subjected to the emotional distress, the heart attack, and my discharge from the company. And it's notable that the handbook, which I'll get to in a minute if I have time here, the handbook stated that there would be no retaliation unless, quote, the employee acts with willful disregard of the truth, unquote. So this defendant Samsell's sham investigation gave the corporation cover to violate the non-retaliation guarantee. Based on your investigation? Yes, they were acting as he... And as a Virginian, correct? In Virginia. Yeah, that was a Virginian, the person... Yes, that was an in-state defendant. That's correct. Nothing much about sham about that. That's the core of your case, isn't it? The core of my case is that there was a sham investigation on the basis of which they said that I was a poor employee and my complaints were false. And then the second in-state defendant that I believe was not fraudulently joined was a defendant, Hasson, who represented the human resources department in all aspects of facilitating my discharge and supervised, in fact, the abusive meetings which were alleged to have caused me the emotional distress that led to my heart attack. And importantly, in their notice of removal, the FLEs virtually admitted that enough had been alleged in the complaint to subject two of the non-diverse defendants to state liability. And they stated in that notice of removal, quote-unquote, the most the plaintiff alleged about Samson and Hasson is that they were background players in an attempt by Johnson and Weldon to drive plaintiff from his employment. But since this is a motion to dismiss, the benefit of the doubt must be given to me. It was not at most what I had alleged, but I at least had alleged that they were players in a scheme to have me wrongfully discharged. So in a case involving wrongful discharge, I think that the FLEs have virtually admitted that there were grounds for it and that there was a possibility of state liability. The degree to which there was state liability is, I believe, an issue of fact for the trier of fact, but that there was liability. Whether they were background players or foreground players, I don't think even matters because a background player in a case of fraud can be as conflating personal jurisdiction with subject matter jurisdiction. I'm sorry? Aren't you conflating personal jurisdiction with subject matter jurisdiction? Well, I think that was the first issue. I know. Do you agree that you did that in your argument? I believe that the personal jurisdiction as a lay person took precedence over the subject jurisdiction of diversity jurisdiction, in this case, as it would have been the international shoot case. So also the court, in accepting the fact that there was fraudulent joinder, they did not cite any law to the effect that persons colluding on causing an individual in Virginia to be driven from his employment could, quote unquote, not possibly face liability in the Virginia courts. And going on to the wrongful discharge account, the court ruled that the handbook was not a contract and that I worked on an at-will contract with ExxonMobil. But my contention is the handbook did, as in many other jurisdictions that I've mentioned in my briefs, did constitute a contract and it rebutted the at-will presumption. The document was written. It was a written agreement with the CEO of ExxonMobil. There were mutual promises and mutual offers of valuable consideration. Exxon promised not to discharge me for violating, for reporting violations of the law and policy of the company, and I promised that I would report those violations. ExxonMobil offered me employment as valuable consideration and I offered my services as my valuable consideration. There was no disclaimer in the handbook that the would rebut the issue of a contract at will, as other ExxonMobil's documents that were submitted to the court did indicate. Also, the handbook had a clause in it, which I mentioned before, that if the employee acts with willful disregard of the truth, then the assurance of non-retaliation would not necessarily... When was that handbook signed? That was... I don't know exactly when it was signed. When it was handed to me was after I was employed by the company. When were you employed? What was the date of your employment? I began on October 1, 2007, and sometime after that, in October, I assume it was in October, I was given a handbook. And in October of 2011 and again in June of 2012, you signed two documents acknowledging that you were an employee at will. I contend that I did not. The first document I did, that was on my resume, actually what I was signed over was receipt of document. It was an acknowledgement that I was... I'm looking at joint appendix 165. Are you saying that's not your signature? Oh, no, no. I'm saying it's my signature. I'm saying it's signed over the statement... Acknowledgement of receipt. Acknowledgement of receipt. I only acknowledge receipt. But the most important point here... Right. So you acknowledge receipt. But my most important point is the contract had been breached at that point because I was under disciplinary activity at that point. So I contend that the contract began with being handed the handbook and it ended when the retaliation began. So the fact that I signed that during a disciplinary meeting does not mean anything anyway. And as I've mentioned before, it never acknowledged that I was working under a at-will contract. It acknowledged that I received a document in which ExxonMobil carefully stated that nothing in this document which said that I would be re-evaluated in several months, nothing in that document in that period of time would indicate that I had a contract for that period of time. So Exxon was simply protecting itself. And that's where I believe its non-addition of a disclaimer in that handbook was very significant because ExxonMobil was very clear if there's any question that a contract was being formed with a handbook or any other document to state that it did not contradict the at-will presumption. That was post-breach their activity. Yes. My signing of it was post-breach. It already had been breached, the contract. And also it was under duress, I would have to say this. It could never, I believe, stand in a trial court because it was a disciplinary meeting in which I was forced to sign the document. Even if you were at-will, let's go to the public policy exception. Oh, public policy exception, yes. Explain that. You're a physician, correct? Yes, I believe there was... You're licensed under the state of Virginia? Yes, I am, Your Honor. And tell me this. How did Exxon get into the pharmacy business? Whose DEA number did they use to get drugs? This is as alleged. This is a very good question because... Yes, I want to know too. I believe it was illegal. Right. And that's why I... But you're the one who had the DEA number, correct? I have a DEA number, but that doesn't give me the right to practice pharmacy and it doesn't give me the right to stockpile or distribute medication. And they were two things I was asked to do. I reported and I alleged in the motion for judgment that I was discharged on the basis of... And the two statutes were the Virginia Code 54.1-3310 and-3435, which are the specific statutes which I cited in my memoranda to the court. The court said... Is it in your complaint? It's not in the complaint. It was in a memorandum. And I cited in my brief before this court, I quoted the case of Story v. Patient First Corporation in which they said that when somebody does cite those relevant statutes in memoranda before the court, even if it was not in the original motion for judgment, that under federal rules 15A, that a leave for men should have been granted. It was more than clear to anybody that Exxon, they knew why you were bringing the suit, the public policy issue, correct? Well, yes. I mean, it was stated that, quote, unquote, that it was contravening the public policy interests of the Commonwealth of Virginia in protecting public safety, health, and welfare. Because they were stockpiling the medicines and that, right? That was clear. It was very clear, I believe, in the appeal. And as for the issue of fraud, the court had ruled that I had not alleged that it required specificity, but I believe it was as specific as it needed to be. It was very clearly stated in my complaint that the handbook invited false representations of non-retaliation, that they were made by the CEO on behalf of ExxonMobil, that the document was given to me shortly after being hired in October 2007 at my work site in Fairfax, Virginia. So I did answer the who, what, where, and when of the fraud. It was all in my complaint. Was your discharge based on your reporting of the alleged violation or your refusal to violate law? Or my refusal? It was really both. I alleged that I had been discharged for refusing to follow it. Focuses on the reporting aspect, doesn't it? Well, it was both. It was both reporting of the violation and refusal to go along with the request to violate the law. Right, because you cited about not going to New Jersey, right, in office. Yes, that was what triggered the whole thing. Exactly. More than just reporting, but actually... Oh yes, it was definitely... I said I'm not going to get the license if it means I'm going to have to break the law in New Jersey. And as to fraud, I think credence is given to the existence of the fraud by the position taken by ExxonMobil that I could not possibly have relied upon the assurances of non-retaliation since I knew I was working at will and could be discharged at any time. In other words, the company was saying that the assurances of non-retaliation were false at the time they made them, and they knew they were false. I'm running out of time, so I'll just go very briefly into the issue of the physical injury. It was not, I believe, my heart attack. It was not an injury by accident. Very specifically, for an injury or illness to be covered under the Virginia Workers' Compensation Act, it must be caused by a condition peculiar to the type of employment, and it must result from conditions of employment exposing the employee to hazards to a degree beyond that of the general public. I don't believe having emotional distress in my job as a clinic physician caused by my supervisor would meet that necessary standard under the Virginia Workers' Compensation Act. Thank you, sir. Thank you. We reserve some time. Mr. Murphy? May it please the Court, Tom Murphy for the appellees. There are no less than 11 appellees in your case, Your Honors. ExxonMobil Corporation, the appellant's former employer, and 10 individuals. It might be helpful to look at who those 10 individuals are. Four of them are his former supervisors. They're based either in Texas or in Chevy Chase, Maryland, or in the United Kingdom, none based in Virginia. He then includes a hodgepodge of about six individuals who are human resource professionals, auditors slash internal investigators. Where does the investigator live? Well, there's two, actually four investigators. Two of them, there's two investigations, Your Honor, that the appellant alleges occurred. The first investigation, both investigators lived in Texas. The second investigation that occurred after he made a second complaint, one lives in Texas, Mr. Carr, C-A-R-R, and the second one lives in Virginia. One takes one, right? It can only take one, Your Honor, that's correct. Unless, as we allege, that's right. Unless, unless that individual has been fraudulently joined, and that's what we believe. He brought the suit to state court, didn't he? He did, Your Honor. Okay, so he's certainly not trying to avail himself of some jurisdiction other than state court. That's correct. And there's no question that he had impersonal jurisdiction over that person, right? Not disputed at this stage, for purposes of, not admitted, but for purposes of this argument, that's correct. Okay, go ahead. And which, what's the name of the one investigator in Virginia? Samsell. Samsell, okay. There's three out of this ten, there's three individuals who are non-diverse. Yeah, I just wanted to make sure I understood which specific one you were talking about. And does he allege that this was a sham investigation on behalf of Exxon for their benefit to be a facade to cover up their illegal activity? That is his allegation, but. And wouldn't that investigator be working solely for Exxon? For purposes of argument, that's correct. And wouldn't that be in a sense an agency, in a sense, a fact, a fact. That's an agency of fact, is it not? Under his allegations, it could satisfy Respondent Superior, but it could, could, but it did not. And if I may address why it did not, Your Honor. Yeah, tell me why as a matter of law it did not. And as a matter of law, and as a matter of fact, as alleged in the four corners of the complaint, we respectfully submit it was not. If you look at each of these three non-diverse individuals, certainly as the court has seen. I just want to deal with one. Just one. The others you said, you said they're not. So I don't worry about them. Let's talk about the Virginians. Yeah, the, the, well, there's three, there's three that are Virginian, the three. Okay, but the one, the investigator right now. Let's hit the investigator first to your precise question. Yeah, sure. Samsel. Samsel conducted a second investigation with an individual by name of Carr, a Texas investigator or auditor. And if you go to the complaint, and I believe it's paragraph 20 of the complaint, that's where the appellant outlines what exactly Carr, Texas resident, and Samsel did or did not do. And what's remarkable, Your Honors, in this 14-page complaint, Samsel, the Virginian resident, Virginia citizen, is not accused of any specific activities that would fall under these common law torts of fraud, intentional infliction of emotional distress, and physical injury, the third cause of action the appellant brings. Remember, the fourth cause of action, wrongful discharge, is only brought against a corporation. So if you read paragraph, when you read paragraph 20, you can see Carr's name mentioned no less than seven times in paragraph 20. Again, this is a detailed complaint. Samsel's name is mentioned once. In the very first sentence, who investigated the case was Samsel, but the appellant goes up with Carr. But the appellant goes on and accuses Carr of a list of horribles, alleged horribles, to try to fit neatly within each of these little pigeonholes of fraud, which has to be pled with particularity, intentional infliction of emotional distress, which we have to see elements of outrageousness, the tort of outrage, and physical injury. Carr, there's an attempt by appellant to fit Carr into the four corners of each one of those three complaints, but not Samsel. I would respectfully submit, Your Honor, Samsel and Monsivais, who's not even mentioned anywhere in the complaint, as you saw in our brief, and as a result, Monsivais, that's one we should pass by quickly, and Hasson, the human resources person, we respectfully submit that even a reading of the complaint shows that perhaps they were an afterthought, because they're listed at the bottom of the complaint. Now, maybe that's entitled to no weight. You're really going to turn jurisprudence on its head. Now, not only that they don't get the benefit of the inference of the non-moving part of it, now we're going to be soothsayers and mind readers and say that to kick them out of court. I mean, that's not the law. And that's not the law. That's correct. And clear, a reading of, and we have a pro se litigant, what we do in the court, we can't say that Section 338 was not there, but we certainly have some leniency there. And clearly, it's alleged that Exxon covered up their illegal stockpiling in pharmaceuticals. That's what's alleged. Of course, you know, you'll have your day in court, whatever, whatever, all the powers to prove that, but it's alleged that you did it, and the investigation was to cover it up and make it a sham investigation, to whitewash it. And that Virginia is a part of that alleged investigation and could not be acting for anybody but Exxon. That's what's alleged. So, and you have a pro se, honestly, as a matter of fact, that's what I want to hear with you, as a matter of law, that that could not be the case. Though, and this is where the law does kick in. And again, this is a very detailed complaint at 14 pages. This is a pro se litigant who has been given every courtesy and every benefit by the district judge. We've seen references. Wasn't allowed, nobody brought to amend his pleading. He didn't seek leave to amend the pleadings, Your Honor. And in his briefing before the district judge, he had ample opportunity, in fact, did supplement his facts in the briefing that he submitted before the district court. Again, he was extended every courtesy in that regard and every benefit the pro se litigants and our judiciary should be given. And he was. But, Your Honor, the facts, as you allege, do not fit within the three causes of actions against these three diverse defendants that he's named. Fraud. He has not alleged what Samsell said, what Samsell did that was a false representation. And the time and place that that occurred and how Samsell's false statements, whatever those were, were relied upon by the appellant. In other words, what did Exxon Mobil take from him after making those false representations? Intentional infliction of emotional distress is the other accusation he brings against Samsell and these other three individuals. And again, this court knows that intentional infliction of emotional distress is highly disfavored in the law, particularly in the employment context. And Montsevier, again, nothing alleged that Montsevier did anywhere in the complaint. Samsell, the gentleman we're talking about now, he simply mentioned here in paragraph 20 as being Carr's wingman. It's a different type case, though, as alleged. You're right. It is disfavored normally in the context of employment. But here we're talking about, as alleged, and I think it's undisputed, some of this, you have the plaintiff who is a licensed physician, an MD, another Virginia law, an MD, he or she can do anything in the healing arms, anything, even out of their practice. So independent obligation, patient, physician, all those type things. Well, he's alleging that they conducted a sham investigation to cover up a big corporation, stockpiling pharmaceuticals, had no right to do so, absolutely illegal, to the detriment potentially of persons that he had to see as a physician. That's what he's alleging. So he's saying that that did have an impact. Because to washing that over, because it was Exxon who called for the investigation, correct? After his complaint, correct? After the complaint, the company initiated the investigation. Exactly. So the idea is that we're concerned about this. We're going to investigate it. And then you have, this is alleged, I'm not saying it's true, alleged. Also, you get this person to come who's a Virginian, give us an investigation so we can act upon this and that. Oh, it was all fine. Nothing wrong with it. All totally legal. That absolutely goes to the very sine qua non of the whole case. That's what he's saying. That's not peripheral at all. He is saying that, Your Honor. The problem is, here is the problem. The causes of action that he has selected to advance this dispute, this upset that he has with ExxonMobil, are not satisfied by these allegations, even if they're true. Even if ExxonMobil was illegally stockpiling. As to any of the defendants, not just the three Virginians. Correct, correct. How do you say that as a matter of, you mean tell me, destroying a physician in his or her profession? Destroying them and saying that they're incompetent and do that as a sham, as a conspiracy? As a matter of law, that can't be if it's done intentionally? Because that's what he's alleging. This is not accidental. They're covering up illegal activity. I can't understand it. This case seems like as if that's something, this is a frivolous case. As alleged, this is a very important case. How would you like to have potential medication that might be stale or stockpiled? I'm not saying it's true, but that's the case. This is not talking about, I missed my lunch. I was too late. I didn't punch a card. And he does, I'm sorry, he does also allege that it was implied that he's a pedophile. That is pretty outrageous. Wouldn't you agree? Well, first of all, some might say it's outrageous, but we don't know. He carefully chose the word implied. So he doesn't say what words were used to accuse him of being a pedophile. Whether that rises to the level of outrageousness, conduct not tolerated in a civilized society. Some of the sentences given in federal court for pedophiles. Some of them must think it's outrageous. 200, 300 months, 600 months. It's a pretty serious allegation, isn't it? And we've seen in the cases cited, and indeed one case that we brought to the court's attention outside this jurisdiction, where Domino's delivery person in the Pennsylvania case cited in our brief, the individual indeed was also accused. There was no implication. He was called a pedophile. And the court used appropriate language to say that was highly offensive and inappropriate. How he was implied to be, how the implication of pedophilia occurred. He gives no allegations, your honor. And that's the heart of the failing of the intentional infliction of emotional distress claim. That's the heart of the failure of the fraud claim. And that we're not told the particulars, even though that's required and pro se litigants should be given every doubt. That's part of the common law of the state of Virginia. Really, most states. That fraud is one of those unique torts that has to be pled in particularity. Even in the federal rules, in Rule 9, fraud is identified as one of the sole torts that has to be pled with particularity. And that wasn't done here. So I appreciate the court's concern, what it's expressing in terms of the story that the appellant brings forward. Serious, as the court says. They were very disturbing, no doubt, to the appellant. That's assuming they are true. That they stand neither admitted or denied. At this stage, there was no answer file. Do you agree it would be dangerous to the public if this company's stockpiling would have no authority to do so? Would that be dangerous to the public? I'm not in a position to answer that, your honor. I have no pharmacy background. I didn't think the district court had it either, the amount of lawsuits there was in public policy. But while all those things being true, and they have to be taken as true, and every inference taken is true, as your honor has pointed out, this experience pro se would. Again, as we mentioned, this is a person that's been in the courts 25 times with different lawsuits. What difference does that make? It could make a slight difference in terms of, your honor, when we look at the sufficiency of the pleading. This is a lengthy complaint. The appellant has very articulate. He's expressed himself very well in the pleadings before this court and the court below. He's taken the opportunity to expand upon his allegations, a very impressive discussion of the relevant case law. But my point is this, your honor, that despite all of this experience, we have before it, the district court had before it, with these three diverse, non-diverse individuals, and with respect to the Rule 12 dismissal, this is what the court had before it within the four corners of the complaint. As much as anyone might be troubled by the allegations, they can't recast the accounts, the claims that are made by an individual such as this appellant into something, for instance, like a conspiracy claim. There's no conspiracy alleged here. And the reason that's important, your honor, is this court very recently in a case it decided earlier this year, the Flores versus Ethicon case was decided in our brief and decided in March of this year. It's very helpful on this because this court has said, listen, it's not enough for a plaintiff in the court below to kind of cast the net wide and accuse everyone by guilt, guilt by associations. Matter of fact, that was the phrase used in the Ethicon case, guilt by association. With respect to each one of these 11 defendants, Exxon Mobil and the 10 individuals that he plaintiff has to come forward with facts warranting a cause of action under fraud, intentional affliction, emotional distress, physical injury, and wrongful discharge that would warrant a judgment against relief against each one of those individuals independently. And this court criticized, well, it didn't criticize, it highlighted the fact that the which is what we have in this complaint. We have bid players, as they might be called, or I think they were referred at one point to background players, people who just happened to be there that are now parties in a case, in this particular case. What specificity would you want him to give in a case like this? What he's saying is very simple. It's common sense. It's very common sense. It's saying that Exxon was engaged in illegal pharmacy stockpiling. This is illegal. That's undisputed. And in that context, he was compromising my role as a physician licensed in the state of Virginia to the detriment potentially of the harming people. That's wrong. When I told them about it, in spite of their handbook that said I would not be retaliated against, they collectively, in this concerted effort, did so. They had a sham investigation. How much specificity do you want? I mean, the hairs on the back of their hand when they did, when they wrote stuff? What else would you? I mean, tell me, you're a physician, a learned counsel. What should he come up with? Well, under the three counts here, fraud is very clear what he has to come up with. He has to come up with the exact- Hold on. Let's talk about the fraud and the reflection. I'm talking about he's got you there, Exxon, clearly miscount. And that's what he's saying. Tell me, what would he need against you? Well, again- I mean the Exxon, to make it clear. Understand, yes, or the corporation. Yes, yes. Your Honor, and sometimes even good lawyers make a mistake in the causes of actions that they select. And there could have been factors here. He brought suit after, long after he was terminated. Some counts might have been barred by a statute of limitations. Whatever the rationale was, and we don't have to speculate here, he chose these counts. For this, essentially, is a garden variety, wrongful termination claim, a dispute over his employment. And instead, he brings fraud with its particular pleading requirements. Intentional infliction of emotional distress, a claim that the courts have shown great reluctance to allow, and physical- But it's not out of whole cloth. You're right. There may be some legal problem, but it's not. He said he had a heart attack. And that's what he said. All he can do, we have to accept that it's true. He had a heart attack from a stress that was meant to be. A few days before his surgery was scheduled, they pressed him on things. And that might not be of legal significance, but the point is, there are facts alleged why he would suggest that that was the result. So this is not a case where he's sort of, oh, okay, well, I stomped my toes on my way to the thing. But that's what he says. I'm talking about the point is that in that count, he says that Exxon discharged him because he reported and refused to go along with illegal activity that directly implicated the health and safety of Virginians in Fairfax. Virginians, so state action. Then you come and move this to federal court and say, oh, let's dismiss this because this is another case. No, I'm talking about why this is not a case against you, that you had people alleged a sham investigation, a sham investigation, and you did that all for a concerted effort to wash this over because you didn't want to disclose that you were violating law in a dangerous situation. That's why that's not a cause of action, clearly, against you, even if that's not completely the first time. You should be in federal court or whatever. Why is it not? Your Honor, my question would be good. Yes, I will. I have 13 seconds remaining if I may answer that one. Well, I think that I can give you some time to do that. Thank you, Your Honor. I will. Thank you. And how I would answer the question is in two ways, Your Honor, very briefly. One is if taking those allegations is true, which we must, that is a wrongful termination claim at best that is not against any of the individuals. That is only against Exxon Mobil, in which case removal should be allowed, even under a very favorable reading of that. Secondly, he doesn't satisfy the public policy exception we would respectfully submit because he's not within the zone of the statute's protection. The statutes that he cites, which weren't cited in the complaint, are there for the benefit of consumers, not for the benefit of physicians. And that would be my answer, Your Honor. For consumers? You mean tell me physicians are not consumers? Who buys the medicine before the patient gets it? No, answer that. Yes, sir. Who? Who? It may be the doctor. It may be their practice. It could be. I think so. The doctors dispense all kinds of medications. You think they get it free? We would respectfully submit, Your Honor, the statutes that he cites, they're licensing statutes for pharmacists. And the licensing is for the benefit of the consumers of these medications that are being dispensed, either by physicians or by pharmacists. I am over my time, Your Honor. You said an MD can't dispense medicine? I did not say that, Your Honor. What I did say is that he is not within the zone of protection, and that's a requirement, under the Bowman exception, to the very strong at-will principle that the state of Virginia adheres to. Thank you. Thank you, Your Honor. I guess you reserved a few minutes. Thank you, Your Honor. Very briefly, first of all, as to whether I fell in the class of individuals that the statute was designed to protect, as an operator of a clinic which had a pharmacy operation, which was not legal, I think that statute particularly afforded me protection because I could close down that pharmacy, which I did, because it was illegal. So not only as an operator of a clinic and a pharmacy, but I was a licensed practitioner as well. I could have lost my license as a result of doing the activities which Exxon asked me to do. And in addition, I was a consumer of medication from these pharmacies, and very specifically, not as a member of the general public, but as an employee of Exxon Mobil Corporation, I received, potentially, medication from that clinic. As to a few other quick points, the appellants, the appellees mentioned how many people were mentioned in this lawsuit. And I'll just say very briefly, the reason so many people are mentioned in a lawsuit against Exxon Mobil is because it is a top-down corporation. Nothing is done without multiple approvals laterally and vertically. So many people were involved in this. As to the issue of the intentional infliction of emotional distress, I believe that the citation by the court of the Womack case was not relevant in that Womack dealt with emotional distress leading to emotional injury. I'm saying emotional distress led to physical injury, which is not covered by Womack. Let me just say very briefly on this issue of the pedophile stuff, which was mentioned in the motion for judgment, is that it was not, I never claimed that it was a case of defamation. They seem to be conflating defamation with intentional infliction. In Virginia, to file a case for defamation, you must specify the exact words that were spoken. But in this meeting, which is alleged in the motion for judgment, an individual in front of members of the law department of the Exxon Mobil Corporation, my colleagues and my reports made an implication that I was a pedophile. And my question to the court would be, if it's not intentional infliction of emotional distress, I don't know what is, or looking at it differently, if one cannot sue for emotional distress in a situation like that, what can one sue for? The words were carefully chosen to imply and not to state that I was a pedophile. I'm just curious, how was it implied? It's very unpleasant to state, but it was stated in the motion for judgment. But it was at an awards ceremony for my admin, who was working for the company for 10 years. And an individual, we were talking about her daughter and how willful the daughter was, and an individual, the medical director said that if I would be careful with your daughter around Rick, that is me. I later asked him in private not to ever say anything like that again. He told the mother that? He told the whole audience. The mother was there, my reports, members of the law department, the admin of the general counsel for downstream Exxon Mobil was there, an attorney was there. This was not subtle. I then went and asked the individual if he would please never do that again, because that's a very serious, even, implication in the society. And a few minutes later, he came to my office, and it's in the motion for judgment, and asked me, in fact, if I was a pedophile twice. And then I told him it was outrageous for him to get out of my office. In terms of when the suit was filed, by the way, and that was a year or so, a lot of the retaliation, because that was the same individual to whom I had told that I would not, you know, illegally practice pharmacy. And this was part of that retaliation. But in terms of when the lawsuit was filed, it was filed actually two months after his discharge. It was not filed a long while afterwards. And in terms of the sham investigation, I think there's no question what sham means. It means fraud. It means deceit. And yet the appellees, in their brief, referred to it as they changed the words, and they called it an incompetent sham investigation. I don't know even what that would mean, but it was a sham investigation, and it was conducted by the in-house or the in-state investigator. Thank you, Your Honor.
judges: Roger L. Gregory, Henry F. Floyd, Stephanie D. Thacker